LOBRANO, Judge.
This appeal arises out of a judgment in favor of American Thrift and Finance Plan, Inc. (American), the second mortgage holder, against Guaranty Savings and Homestead Association (Guaranty), the first mortgage holder, reducing the proceeds due Guaranty pursuant to a foreclosure filed by American. American purchased the property at sheriff’s sale and now contests the “pay out” due Guaranty. The events which precipitated this problem are as follows.
CHRONOLOGY OF EVENTS:
July 30, 1976: Shirley Sampson, wife of/and Shallon S. Bienemy, Sr., (debtors) *40 execute a promissory note paraphed Ne Varietur for identification with an Act of Sale and Mortgage (first mortgage) in favor of Guaranty in the amount of $16,-500.00 bearing interest at the rate of 8.75% per annum from date until paid. July 18, 1985: Guaranty files petition for executory process against debtors who defaulted on the first mortgage.
August 2, 1985: While the foreclosure is pending, the debtors grant a collateral mortgage (second mortgage) in favor of American in the amount of $50,000.00. August 6, 1985: American’s collateral mortgage is recorded in the mortgage office in M.O.B. 2505, folio 86.
August 8, 1985: Guaranty dismisses its executory process petition in return for an amendment to the mortgage by the debtors.
August 9, 1985: Guaranty recorded the amendment to its first mortgage in the mortgage office in M.O.B. 2505, folio 183. This amendment increased the interest rate from 8.75% to 1372%.
March 1, 1986: Debtors again default on Guaranty’s first mortgage.
November 2, 1986: Debtors default on second mortgage in favor of American. November 18, 1986: Guaranty files petition for executory process in Proceedings No. 86-20978 of the Civil District Court for the Parish of Orleans.
March 31, 1988: American files petition for executory process, in Proceedings No. 88-6142 of the Civil District Court for the Parish of Orleans from which this appeal arises.
September 29, 1988: Orleans Civil Sheriff’s sale held wherein the mortgaged real estate was purchased by American, the second mortgage holder, for the sum of $26,576.00.
Following the sheriff’s sale, Guaranty submitted a pay-out statement to the Civil Sheriff. That statement included interest due in the amount of $5,173.69 which was computed at 13V2% from March 1, 1986 (the date of default) thru September 29, 1988 (the date of the Sheriff’s sale).
American filed a rule to reduce the interest due. As second mortgage holder they asserted that the interest rate should be computed at 8.75%, and not 13½%. On December 20, 1988 the trial court ruled in American’s favor and ordered that Guaranty submit a revised statement with interest computed “at a rate of 8.75% until paid.”
Pursuant to the court’s ruling Guaranty submitted a revised statement to the Civil Sheriff computing interest at the rate of 8.75% from March 1, 1986, the default date, thru December 20, 1988, the judgment date, for a total of $3,644.58. The per diem costs for each day thereafter was set at $4.36.
American filed another rule challenging Guaranty’s revised interest computation asserting that the 8.75% rate should be computed from August 6,1985, the date American recorded its second mortgage, and not the date of the debtor’s default.
The trial court agreed with American’s position and on April 17, 1989 issued its judgment “establishing the interest rate that can legally be charges [sic] by Guaranty Savings and Homestead Association at 8.75% commencing from August 6, 1985 until present.”
Guaranty perfects this appeal. They do not contest the trial court’s judgment fixing the interest rate, as it affects American, at 8.75%. They contest that portion of the judgment which requires computation of the interest charges from August 6, 1985, the date American filed its second mortgage. Guaranty argues that for seven months (from August, 1985 thru February 1986) it collected 13V2% from the debtors which it was legally entitled to do under the mortgage amendment. They assert that American should not be entitled to a refund or credit on that interest legally collected. Guaranty has no objection to computing the interest at 8.75% from March 1, 1986.
American argues that since they recorded their second mortgage prior to Guaranty’s loan modification agreement, they should not be prejudiced by the increased interest rate. They urge that Guaranty should not benefit by the increased interest to the detriment of American’s position, *41 and that the amount due Guaranty from the foreclosure proceeds should be reduced by the additional interest collected during those seven months. American further argues that the trial court erred by allowing the interest computation “until the present” rather than through November 4, 1988, the date the Civil Sheriff received the sale proceeds.
With respect to American’s second argument, we note that they failed to answer the appeal of Guaranty, and therefore cannot seek to reverse or modify the trial court judgment. La.C.C.Proc. Art. 2133; Anderson v. Anderson, 513 So.2d 399 (La.App. 4th Cir.1987). Thus, the only issue for our review is whether the 8.75% interest rate computation, as it applies to American, is to be computed from August 6, 1985, the recordation date of American’s second mortgage, or March 1, 1986, the date of debtor’s default.
We agree with the legal principles argued by American that they had a right to rely on the public records doctrine and cannot be prejudiced by the subsequently recorded amendment to Guaranty’s mortgage. La.C.C. Art 3342 American is a third party protected by Louisiana’s law of recordation. La. C. C. Art. 3343. However, the issue is whether or not they were in fact prejudiced because Guaranty collected the additional interest during the seven month period. We determine they were not.
There is no dispute over the fact that Guaranty could amend its mortgage and legally collect a higher interest rate from its debtors. During the period August 6, 1985 through March 1, 1986 both American and Guaranty were paid by the debtors. There was no default until March 1, 1986 when the debtors failed in their payment to Guaranty. Until that occurred American suffered no harm because they received what they were entitled to receive. However, once the debtors ceased payments on Guaranty’s mortgage, the entire balance became due and interest began to accrue on the outstanding balance at 13.5%. From this point on the mortgage amendment prejudiced American position because the accumulated unpaid interest would reduce the equity available to satisfy American’s mortgage. In other words, the debtor was free to pay Guaranty any interest rate they agreed to. However, once the debtors ceased payments, Guaranty could not obtain the additional interest by reducing American’s equity in the property. Clearly the prejudice to American’s position began at that point.
Accordingly, we hold that Guaranty is entitled to interest at the rate of 8.75% from March 1, 1986. That portion of the trial court judgment in conflict with this ruling is reversed. In all other respects, the judgment is affirmed.
AFFIRMED IN PART, REVERSED IN PART.